Stanard, J.
The decree of the court below affirms two'propositions: 1st. That it was proper to make Givens account for the amount he had made from Stribling's property, and limit his share of the indemnity *389 furnished by the assignment of Tagart’s claim, to a sum equal to the excess of an equal aliquot part of the aggregate of the amount so made and the indemnity fund, above the amount so made. 2ndly. That the sureties in the prison bounds bond were entitled to substitution to the original rights of Nelson, so as to enable them to share with Nelson’s cosureties the said indemnity fund, in like manner and to like extent as Nelson could, if satisfaction of his claim on Stribling, and consequently on the indemnity fund, had not been obtained from the sureties in the prison bounds bond.
Though, under my present impressions, I should dissent from the first proposition, (strongly inclining to the opinion that the proper rule is to make the amount that Givens recovered in the pursuit of his separate remedy against Stribling, available to the other original sureties so far only as the recovery of that sum lessened the amount required from Givens’s equal share of the indemnity fund, to complete his indemnity,) I forbear to enter into an investigation of the question, or to give a definitive opinion on it, because the decree in this respect conforms to the principle that Givens in the court below assented to, and even contended for, and he only is interested in applying the different rule that I incline to think is the correct one.
I dissent from the second proposition, and think this dissent is justified by authority and reason. The proposition is opposed to the direct adjudications, or to principles avowed in or deducible from the cases, of Parsons v. Briddock, 2 Vern. 608. Wright v. Morley, 11 Ves. 22. Hull v. Pitfield, 1 Wils. 46. Douglass v. Fagg, 8 Leigh 588. Sound reason equally condemns it.
The fund, to a participation in which the decree admits the sureties in the prison bounds bond in equal degree with the original sureties of Stribling, substituting them to the supposed right of Nelson one of the original sureties, is the produce of an assignment of *390 Stribling. To the indemnity of those sureties, including Nelson as one of them, the assignment had dedicated that fund. When the sureties had paid their respective parts of the debt for which they were sureties, they were severally entitled to demand of Stribling reimbursement of the sums so paid, and they had equal right to resort to this fund as a security for that reimbursement. The right to resort to the fund depended on the continuance of the necessity of that resort, to obtain reimbursement; and the termination of that necessity, by the discharge of any one of the claims of the several sureties on Stribling, liberated the fund from the claim so discharged, and left it liable for those that remained undischarged. The primitive and overruling right of the sureties, as between themselves, was to have it applied to the indemnity of all and each, and it could not be applied to any other object until that was attained. None of the sureties could claim participation in it but for the purpose of indemnity, and the whole fund remained chargeable by each for that purpose until the indemnity was complete or the fund exhausted. Each, then, as a consequence of the nature and quality of their primitive rights, had an interest in the diminution or discharge of the claims of each, as such diminution or discharge lessened or might lessen the charge on the fund. Each, too, was at liberty to seek reimbursement from any other source, and the success of such pursuit by any one of them was incidentally the success of all, so lar as it diminished the occasion of that one to draw equally with the others on the indemnity fund to complete his reimbursement. If a new security were acquired by any of them, he held two securities for his reimbursement, while the other sureties held but one; and in such case, under a familiar and clear rule of equity, if, before he made the new security available, he had been reimbursed in whole or in part from the indemnity fund, the other sureties-(the *391 incumbrancers of that fund) would be entitled to be. substituted in his place, and claim under the new security, at least out of the surplus thereof that might be left after he had been fully satisfied, a sum equivalent to that he had received from the indemnity fund. This principle of equity is stated in, and illustrated by, adjudications too numerous and familiar for citation. If the new security be an incumbrance on property.of the debtor, no one would question the soundness of this principle, or resist its application. The decree therefore must have proceeded on the supposition, that where the new security is not a lien or charge on the property of the debtor, but the personal responsibility of another, though that responsibility came in the place of some lien on or remedy against the property or person of the debtor, obtained by the pursuit of the creditor, then the principle, does not apply. In such a case, according to the principles of the decree, the new security is wholly unavailing to improve the condition of the other original incumbrancers: if it is not enforced by the party who may have obtained it, the other incumbrancers are not entitled to a cession of it, and the enforcement of it is of no benefit to those incumbrancers, as the parly against whom it is enforced takes the place of the creditor he has satisfied, and the original charge on the fund in respect to the debt satisfied is undiminished. Examples illustrating the operation of the principles which conduct to such a consequence, are perhaps the aptest means of testing their soundness. Thus, one or more incumbrancers, who have a security in common with others on a particular fund, in pursuit of additional security or satisfaction from the debtor, obtain judgment against him, sue out execution, and levy it on property sufficient to satisfy the claim. If the property be sold and the claim satisfied, the common fund for the security of all is liberated pro tanto, and remains a security for the others. But in *392 stead of a sale under the execution, the property is restored to the debtor on the interposition of a friend as a surety in a forthcoming bond, and his responsibility stands in place of the satisfaction thus intercepted ^.7 tbs intromission; and on this responsibility he is eventually charged and compelled to pay. It seems but reasonable that this payment should produce the same effect on the rights of the incumbrancers, as if satisfaction had been had from the sale of the property levied on. Yet according to the principles of the decree, all this is fruitless of benefit to the incumbrancers, and their rights are the same as if the debt had not been discharged: and this result is produced by the active interposition of a court of equity, in favour of the party whose voluntary intromission has frustrated a satisfaction of the claim, that would have removed it from the incumbered property. This, I think, instead of being sanctioned, is forbidden by the principles of equity. It is not perceived that the sureties in a prison bounds bond would have a better title to substitution than those in a forthcoming bond. The body in execution, though it be not a satisfaction, yet tends to satisfaction, and the sureties in the bond, by becoming bound as such, withdraw the debtor from prison, and enable him, by escape from the bounds, to deprive the creditor of his lien on the body. Their obligation holds the place of that lien, and its value is tested by the amount realized from that obligation.
The proposition on which the decree rests, raises the right of the sureties in the prison bounds bond to participate in the indemnity fund, to an equality with that of the original sureties. The primitive rights of the original sureties to participate in that fund for the purpose of indemnity, were equal, and continued so in each and all, while the fund was required for that purpose. It was the inherent and essential quality of such a right, to terminate in respect to any one of the sure *393 ties when he should be indemnified, in favour of others . . not indemnified. When any one obtained indemnity under his separate remedy against the principal for his separate claim on the principal, his right was extinct in favour of the other sureties, from the law and equity applicable to their relations to and interest in the fund, and no remedy or right remained in him, to which to subrogate the sureties in the prison bounds bond; and it was not the proper function of a court of equity to revive this extinguished right, in favour of sureties that had taken the place of the debtor, and come in the stead of one of the remedies against him, for the purpose of diminishing the legal or equitable rights of those to whose benefit the successful enforcement of that remedy enured. Authority and reason concur in pronouncing a dissent from the second proposition on which the decree is based.
The following decree was concurred in by all the judges:
• “ The court is of opinion that there is error in the said decree, in so far as it provides that the sureties in the prison bounds bond should participate in the trust fund for the indemnity of the original sureties in the debt to Bluckburn, in the event of their having made payment to Nelson. On the contrary, the other sureties for that debt had a right to demand that their co-surety Nelson should prosecute the demand to a recovery against the said sureties in the bounds bond, and should be only entitled to come upon the common fund for any deficiency in his recovery from them; and the sureties in the bounds bond could have no right to resort to the trust fund for their reimbursement, except to the extent of any surplus that might remain after the full indemnification of the original sureties; or if Nelson received any thing from the common fund before a recovery on the prison bounds bond, the other sureties *394 were entitled to have the prison bounds bond enforced for their benefit, to the extent of the sum so received by Nelson from the common fund, until those sureties were fully reimbursed the principal and interest of the sums they had respectively paid as original sureties of Stribling.” Therefore decree reversed, so far as it is above declared to be erroneous, and cause sent back for further proceedings.